IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERROL A. HENDERSON**<br>**State College, PA 16803**<br><br>**Plaintiff,**<br><br>v.<br><br>**PENNSYLVANIA STATE UNIVERSITY**<br>**328 Boucke Building**<br>**University Park, PA 16803**<br><br>**Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>: **CIVIL ACTION NO.**<br>:<br>:<br>:<br>:<br>: **JURY TRIAL DEMANDED**<br>:<br>:<br>: |

## COMPLAINT

### I.     PRELIMINARY STATEMENT

Dr. Errol A. Henderson is the ***first***, and until Fall 2019, the ***only*** African American tenured professor in the history of the Political Science department at Pennsylvania State University ("Penn State" or "Defendant").  A champion of civil rights and advocate for anti-racism, Dr. Henderson has openly described the institutional racism at Penn State, particularly within the Political Science department, which has resulted in an embarrassing lack of diversity within the department faculty and its students. In January 2019, Dr. Henderson published an Op-Ed in *The Daily Collegian*, the student newspaper at Penn State, entitled: "Being Black at Penn State."  In this article, Dr. Henderson traced the contours of the systemic racism at Penn State and his own battles with toxic race discrimination within the Political Science department. Within weeks of publication, Dr. Henderson learned that several of his white colleagues had raised complaints that ***he*** had created a racially hostile work environment for ***them***, and that ***he*** was being investigated by Penn State for alleged racial harassment. Penn State ultimately

1

concluded its investigation and formally disciplined Dr. Henderson – **and no one else** – for allegedly creating a hostile environment.  Penn State further denied Dr. Henderson's efforts to be promoted to Full Professor within the Political Science department, removed him from the classroom in his entirety, stripped him of his department committee memberships, and forbade him from even attending departmental meetings.

Dr. Henderson was subjected to a hostile work environment, retaliated against, and discriminated against because of his race in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981 ("Section 1981") and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq*. ("PHRA").[1]  Dr. Henderson seeks damages, including economic, compensatory, and punitive damages, and all other relief under applicable federal and state law as this Court deems appropriate.

## II.    PARTIES

1.     Plaintiff is an African American individual and citizen of the Commonwealth of Pennsylvania.

2.     Defendant is a research university with campuses and facilities throughout Pennsylvania.

3.     Defendant is engaged in an industry affecting interstate commerce and, at all relevant times, has regularly conducted business in the Commonwealth of Pennsylvania.

4.     At all times material hereto, Defendant has acted as an "employer" within the meaning of the statutes which form the basis of this matter.

5.     At all times material hereto, Defendant employed more than fifteen (15) individuals.

---

[1] Dr. Henderson intends to file an Amended Complaint to include a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII"), upon his receipt of a right-to-sue notice from the Department of Justice.

6.      At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the statutes which form the basis of this matter.

7.      At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

## III.    JURISDICTION

8.      The causes of action which form the basis of this matter arise under Section 1981 and the PHRA.

9.      The District Court has jurisdiction over Count I (Section 1981) pursuant to 28 U.S.C. §1331.

10.     The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

11.     Venue is proper in the District Court under 28 U.S.C. §1391(b).

12.     On or about November 8, 2019, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination and retaliation alleged herein.   Attached hereto, incorporated herein, and marked as Exhibit 1 is a true and correct copy of the PHRC Complaint.

13.     On or about May 19, 2020, Plaintiff filed an Amended Complaint with the PHRC, which was cross-filed with the EEOC. Attached hereto, incorporated herein, and marked as Exhibit 2 is a true and correct copy of the Amended PHRC Complaint.

14.     Plaintiff has complied with all administrative prerequisites for the commencement of this action.

IV.    FACTUAL ALLEGATIONS

15.    Dr. Henderson is an African American man who was born in Detroit in 1962.

16.    He obtained his PhD in Political Science from University of Michigan in 1993.

17.    In 2002, Dr. Henderson joined Penn State as a tenured faculty member and Associate Professor in the Political Science and Africana Studies departments.

18.    A former member of the U.S. Army and U.S. Army Reserve, Dr. Henderson's teaching and research focus on World Politics, the Analysis of War, and Africana/Black Studies, among other subjects.

19.    In a typical academic year at Penn State, Dr. Henderson would teach four (4) courses and approximately 140-300 undergraduate students.  Approximately every two (2) academic years, he would also typically teach one (1) graduate course and approximately 10-12 graduate students.

20.    In 2014, Dr. Henderson was given the Faculty Recognition Award from the Multicultural Resource Center at Penn State.

21.    In his broader academic service, Dr. Henderson has served on the editorial boards of several publications and is a frequent keynote speaker at events and community programs.

22.    Moreover, over the course of his employment with Penn State, Dr. Henderson has been a prolific publisher of scholarly works, including journal articles, chapters, and books – including an award-winning book in 2015.

23.    Dr. Henderson has also been awarded fellowships and grants while at Penn State, including a nearly $2,000,000 grant funded by the John Templeton Foundation.

24.    Notwithstanding the success he achieved both in and out of the classroom, Dr. Henderson was vocal about a series of comments and actions that he witnessed being committed

4

by senior faculty members and administrators that reflected systemic and institutional biases.

25.     As early as 2010, Dr. Henderson formally complained about the racially hostile work environment and Penn State's poor engagement with individuals, such as himself, who raise concerns about diversity, inclusion, and discrimination.

26.     For example, Dr. Henderson articulated his criticism over Penn State's failures to successfully recruit Black students and faculty members, which contributed to the unhealthy climate of the Political Science department and served to alienate individuals like himself, who sought to challenge the system that perpetuated these shortcomings.

27.     Dr. Henderson raised concerns about personal interactions he had with the former Head of the Political Science Department (a white female), who arbitrarily commented to him about Black rapists and stated to him during a formal annual evaluation that she had been stalked by Black men while she taught at another university.  When Dr. Henderson asked her why she was telling him this, as it was unrelated to any topic of their conversation, the former Head stated, "Well, you never know where people are coming from," or words to that effect.

28.     In or around 2014, Dr. Henderson began reporting to Lee Ann Banaszak (white), Head of the Political Science Department at Penn State.

29.     Dr. Banaszak reported to Susan Welch (white), former Dean of College of Liberal Arts.

30.     Dr. Henderson complained to Dr. Banaszak about the unprofessional and biased behavior of several of his white colleagues.

31.     For example, Dr. Henderson raised complaints to Dr. Banaszak and other high-level officials at Penn State that he witnessed a white faculty member using the word "bitch" during a tenure committee meeting while discussing a potential candidate.

32.     By way of further example, Dr. Henderson complained in 2015 that the Provost made an offensive and stereotypical remark regarding an individual's ethnicity during an address to many faculty members.

33.     While Dr. Henderson's complaints allegedly were investigated by Penn State, no action was taken to address the inappropriate actions and comments.

34.     Instead, Dr. Banaszak accused Dr. Henderson of "harassing" her by continually raising his complaints about actions taken by his white colleagues to the detriment of racial minorities and women.

35.     Dr. Henderson escalated his complaints and concerns to President Eric J. Barron (white).   In meeting and corresponding with President Barron, Dr. Henderson described the racially hostile climate within the Political Science department of Penn State, which included long-standing discriminatory treatment by Dr. Welch and Donna Bahry, former Head of the Political Science Department.

36.     Again, Dr. Henderson's complaints were ignored or dismissed by Penn State.

37.     In 2015, Dr. Henderson published a book entitled, *African Realism? International Relations Theory and Africa's Wars in the Postcolonial Era*.

38.     After receiving an award and positive reviews for his publication, Dr. Henderson sought Dr. Banaszak's guidance in formally applying for a promotion to Full Professor.

39.     The position of Full Professor is a leadership role at Penn State which is also a stepping-stone to further promotions, more compensation, and added control over committee and departmental assignments.

40.     Dr. Banaszak informed Dr. Henderson that his application would only move forward upon her recommendation or that of Dr. Welch.  She further stated that she would not be

recommending Dr. Henderson for the promotion, allegedly due to purported deficiencies in Dr. Henderson's classroom skills and performance.

41.     In or around December 2017, Dr. Henderson formally complained to Suzanne Adair (Black), Associate Vice President of Affirmative Action, about Dr. Banaszak's refusal to consider him for the position of Full Professor, among other discriminatory actions taken by Penn State's Political Science department against him.

42.     In or around October 2018, Dr. Adair informed Dr. Henderson that she concluded her investigation and that his claim of race discrimination had been unsubstantiated.

43.     Thereafter, Dr. Banaszak took further action to retaliate against Dr. Henderson, including refusing to provide subvention funds for either of his two (2) latest books and continuing to deny him the ability to be promoted to Full Professor.

44.     In January 2019, Dr. Henderson published an Op-Ed in *The Daily Collegian*, Penn State's student newspaper, entitled, "Being Black at Penn State."

45.     In this article, Dr. Henderson recounted various discriminatory experiences he had endured in his nearly twenty-years at Penn State, and he called on Penn State to reckon with its institutional racism that had resulted in a dearth of Black faculty members and students.

46.     Dr. Henderson further implored Penn State to take these issues of racial bias seriously, recommended additional oversight and intervention by the administration and the Provost, and suggested changes to combat racism on campus by amplifying the voices of those members of the community who have been subjected to the racially hostile environment.

47.     A few weeks after his Op-Ed was published, Dr. Henderson learned from Dr. Adair that certain white colleagues had complained that *he* had created a racially hostile work environment for *them*.

48.     Although she did not disclose the names of the individuals who had allegedly complained, Dr. Adair did share that they had accused Dr. Henderson of harassment, stemming from his efforts to combat racism within the Political Science department and Penn State at large.

49.     On or around May 16, 2019, Dr. Adair provided to Dr. Henderson a formal letter of discipline, charging him with violating University Policy AD91 ("Discrimination and Harassment and Related Inappropriate Conduct").

50.     Dr. Adair's investigation concluded that Dr. Henderson did "repeatedly refer to, and/or name, specific members of the department during faculty meetings and other forums when [he is] raising issues regarding perceived racist actions or practices," and such conduct rose to the level of harassment and the creation of a hostile work environment.

51.     Thereafter, on May 23, 2019, Dr. Welch provided Dr. Henderson with a letter stating that his "behavior in the Political Science department and [his] public denunciations of colleagues have created a hostile work environment impeding the department from carrying out its normal business."

52.     Dr. Welch further explained that Dr. Henderson immediately would be banned from all departmental meetings and events, and he would not be permitted to serve on any departmental committees, for over **two (2) years** (through June 30, 2021).

53.     Dr. Welch additionally mandated that Dr. Henderson would be prohibited from teaching **any** classes during the 2019-2020 school year, and during that time he would be required to take remedial teaching courses to improve his classroom performance.

54.     Dr. Welch concluded her May 23, 2019 letter by stating that Dr. Henderson's failure to be abide by her edicts would result in further disciplinary action, including possible initiation of dismissal proceedings.

55.     Dr. Henderson has complied with Penn State's requirements and continues to hold the position of Associate Professor in the Political Science department.

56.     His attempts to be promoted to Full Professor continue to be denied.

57.     On June 10, 2020, in the wake of the murder of George Floyd, President Barron wrote to the Penn State community:

> Dear Members of the Penn State Community:
>
> Over the past two weeks I have heard from hundreds of students, faculty, alumni and community members about their concerns involving hate in the Penn State community.  People are justifiably upset about the events in our nation, and the limitations surrounding our institutional response.  We must acknowledge the pain, anger and frustration that such events inflict on our community.  We must recognize that Black Lives Matter, and that racism, bias and religious intolerance yield an inexcusable cost to life and liberty.
>
> We have an obligation to fight ignorance and intolerance, model inclusivity and embrace the power that diversity represents.  Yet we operate in a national environment where there is growing polarity on these issues, greater conflict and an amplification of hate speech.  The path forward will be challenging.  We must work together to address both immediate issues and the solutions to long-standing problems, and to be candid and direct about what public universities can accomplish, while still setting the bar high as a national leader in higher education.
>
> I write to you today to say that we are committed to making changes at Penn State that address these issues. . . .

58.     President Barron's letter to the community in June 2020 largely echoes the concerns, criticisms, and calls for action that Dr. Henderson has been advocating for years at Penn State.

59.     Moreover, President Barron announced various initiatives to combat racism at Penn State – including convening a task force, mandating bias training for all employees, and increasing the hiring and retention of minority faculty members – which mirror efforts that Dr.

Henderson had been suggesting for many years.

60.     On February 22, 2021, President Barron announced additional plans to "develop recommendations for improving the climate for diversity, equity and inclusion at Penn State." Such plans include remedying the significant historical failures by Penn State in addressing issues of racism and bias on campus – the very same issues that Dr. Henderson had been raising to no avail.

61.     Instead of supporting Dr. Henderson's prescient views that are now being championed by the institution, Penn State disciplined *him*, convicted him of creating a racially hostile work environment, and effectively placed him on the bench for two (2) years and stifled his ability to move into a leadership position at Penn State.

62.     Dr. Henderson's race was a motivating and/or determinative factor in Penn State's discriminatory treatment of Dr. Henderson, including subjecting him to a hostile work environment, failing to promote him, and removing him from his duties as a member of the Political Science department.

63.     Dr. Henderson's complaining of discrimination and a hostile work environment was a motivating and/or determinative factor in Penn State's discriminatory and retaliatory treatment of him, including subjecting him to a hostile work environment, failing to promote him, and removing him from his duties as a member of the Political Science department.

64.     The retaliatory actions taken against Dr. Henderson after he complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

65.     Penn State failed to prevent or address the harassing, discriminatory, and retaliatory conduct referred to herein and further failed to take corrective and remedial measures

to make the workplace free of harassing, discriminatory, and retaliatory conduct.

66.     The conduct of Penn State, as set forth above, was severe or pervasive enough to make a reasonable person believe that the conditions of employment are altered and the working environment is hostile or abusive.

67.     As a direct and proximate result of the discriminatory and retaliatory conduct of Penn State, Dr. Henderson has in the past incurred, and in the future may incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

68.     The conduct of Penn State, as set forth above, was outrageous under the circumstances and warrants the imposition of punitive damages against Defendant.

69.     Dr. Henderson is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT I – SECTION 1981

70.     Plaintiff incorporates herein by reference paragraphs 1 through 69 above, as if set forth herein in their entirety.

71.     By committing the foregoing acts discrimination, hostile work environment, and retaliation against Plaintiff on the basis of Plaintiff's race and his complaints of discriminatory conduct, Defendant has violated Section 1981.

72.     Said violations were intentional and willful and warrant the imposition of punitive damages.

73.     As a direct and proximate result of Defendant's violation of Section 1981, Plaintiff has suffered the damages and losses set forth herein.

74.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

75.     No previous application has been made for the relief requested herein.

## COUNT II – PHRA

76.     Plaintiff incorporates herein by reference paragraphs 1 through 75 above, as if set forth herein in their entirety.

77.     Plaintiff's race and/or his complaining of discrimination was a substantial, motivating, and/or determinative factor in connection with Defendant's treatment of Plaintiff.

78.     By committing the foregoing acts of discrimination, hostile work environment, and retaliation against Plaintiff, Defendant has violated the PHRA.

79.     As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein and has incurred attorneys' fees and costs.

80.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

81.     No previous application has been made for the relief requested herein.

**RELIEF**

WHEREFORE, Plaintiff Errol A. Henderson respectfully requests that this Court enter judgment in his favor and against Defendant Penn State.  Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

(a) Declaring the acts and practices complained of herein to be in violation of Section 1981;

(b) Declaring the acts and practices complained of herein to be in violation of the PHRA;

(c) Enjoining and permanently restraining the violations alleged herein;

(d) Entering judgment against Defendant and in favor of the Plaintiff in an amount to be determined;

(e) Awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(f) Awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

(g) Awarding punitive damages to Plaintiff under Section 1981;

(h) Awarding Plaintiff such other damages as are appropriate under Section 1981 and the PHRA;

(i) Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

(j)  Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and

13

preventing future violations.

<table>
<tr><td></td><td>CONSOLE MATTIACCI LAW, LLC</td></tr>
</table>

Dated: May 12, 2021                        By:  _____
                                                Stephen G. Console
                                                Rahul Munshi*
                                                1525 Locust St., Ninth Floor
                                                Philadelphia, PA 19102
                                                console@consolelaw.com
                                                munshi@consolelaw.com
                                                215-545-7676
                                                215-814-8920 (fax)

                                                Attorneys for Plaintiff,
                                                Errol A. Henderson

                                                *Seeking admission pro hac vice