# EXHIBIT 1

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION

|  |  |
|---|---|
| Errol A. Henderson, <br> Complainant <br><br> v. <br><br> Pennsylvania State University, <br> Respondent | : <br> : <br> : <br> : <br> : PHRC Case No. 201902277 <br> : <br> : EEOC No. 17F202060739 <br> : <br> : |

## COMPLAINT

### JURISDICTION

1. Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

### PARTIES

2. The Complainant herein is:

Errol A. Henderson


3. The Respondent herein is:

Pennsylvania State University
328 Boucke Building
University Park, PA 16802

201902277



2019 NOV 12 PM 2:57
PA HUMAN RELATIONS COMM
REGIONAL OFFICE

## PENNSYLVANIA HUMAN RELATIONS COMMISSION
## EMPLOYMENT DISCRIMINATION QUESTIONNAIRE

### 1. YOUR CONTACT INFORMATION

Name: Errol A. Henderson

Address: REDACTED
Street / Apt.
State College / PA / 16803
City / State / Zip Code

Phone Number: (H) 814.234.1441    (Cell) 313.350.1529
Work: 814.865.4409    E-mail address: eah13@psu.edu

Name, address and phone number of a person, who does **NOT** live with you and will know how to contact you:

Name _____    Phone Number _____

Address _____
Street / City / State / Zip Code

### 2. AGAINST WHAT EMPLOYER DO YOU WANT TO FILE YOUR COMPLAINT?

Employer Name: Pennsylvania State University
(Please use your employer's name as indicated on your paycheck or W-2 form)

Address in PA: 328 Boucke Building / University Park / PA
Street / City / State / Zip Code

Phone Number: 814.863.0471    E-mail address: aao@psu.edu

Pennsylvania county where you were harmed: Centre

**NUMBER OF INDIVIDUALS WHO WORK FOR THE EMPLOYER:**
☐ Fewer than 4    ☐ 4 to 14    ☐ 15-20    ☑ 20+

**Type of Business** Higher Education

**Is the employer a federal agency?**    ☐ Yes    ☑ No

### 3. DESCRIBE HOW YOU WERE HARMED, AND WHEN, SO WE CAN DETERMINE IF WE CAN ASSIST YOU. Check all that apply.

<u>Write the date(s)</u> you were harmed beside the discriminatory event or action:

☐ Discharge _____    ☐ Lay-Off _____    ☐ Failure to Recall _____

☐ Forced Transfer _____    ☐ Denied Transfer _____    ☐ Demotion _____

☐ Forced Leave _____    ☐ Leave Denied _____    ☐ Unequal Wages _____

- 1 -    PA Employment Discrimination Questionnaire, Rev. 8-13

☐ Unequal Benefits _____ ☐ Failure to Hire _____ ☑ Failure to Promote _____

☑ Discipline (Suspension, Warning, etc.) May 16, 2019   ☑ Harassment* _____
                                                                                         *Complete question #7 if you were harassed

☐ Forced to Quit _____

Not accommodated because of your: ☐ Disability _____ ☐ Religion _____

**OTHER**, please be specific: _____

### 4. DO YOU FEEL YOU WERE TREATED DIFFERENTLY (DISCRIMINATED AGAINST) BECAUSE OF ANY OF THE CHARACTERISTICS BELOW?

The commission can investigate your complaint only if you believe you were treated differently and harmed because of your race, color, religion, ancestry, age, sex, national origin, non-job related disability or the use of a guide or support animal for blindness, deafness or physical disability. For example, if you feel you were treated worse than someone else because of your race, please indicate race as the reason. If you feel you were treated differently because of your race and sex, please check both race and sex. **Only check reasons which explain why you were harmed**. Also, please identify your race, color, religion, national origin or ancestry, etc. **if** you were discriminated against based on those factors.

☑ Male   ☐ Female   ☐ Pregnant

☐ Age (40 or older only):  Date of Birth _____

☑ Race African American _____   ☐ Color _____

☐ Religion _____   ☐ Ancestry _____

☐ National Origin (country in which you were born) _____

☐ Association with a person of a different race than your own:

Your race _____ the other person's race _____

☐ Use of a guide or support animal _____

☐ Refusal to perform, participate in, or cooperate in abortion or sterilization services

☐ GED   ☐ Other _____

☐ I have a disability. (please complete #8)   ☐ The employer treats me as if I am disabled.

☐ I had a disability in the past. (please complete #8)

☐ I have a relationship or association with someone who has a disability. (please complete #8)

☑ **RETALIATION**

If you believe you were **harmed** because you complained about what you believed to be unlawful discrimination, because you **filed** a complaint about unlawful discrimination, or because you assisted someone else in complaining about discrimination, please complete the following information.

Date you filed a complaint with the PA Human Relations Commission _____

If you filed a complaint with another agency, list the agency's name and date of filing:

_____

Date you complained about discrimination to a manager _____

Date you assisted someone in complaining about discrimination _____

## 5. WHEN WERE YOU HIRED OR WHEN DID YOU APPLY FOR A JOB WITH THE EMPLOYER?

Date you became an employee: June/July 2001

Position for which you were hired: Associate Professor

What was your position at the time you were harmed? Associate Professor

If you were seeking to be hired by an employer:

When did you apply? _____ When did you learn you were not hired? _____

## 6. STATE THE REASONS THE EMPLOYER GAVE YOU FOR ACTIONS THAT HARMED YOU.

A finding by the Affirmative Action Office that I had committed harassment and contributed to a hostile climate in my department (i.e. Political Science)

Who told you about the employer's reasoning for the action? Include his or her job title.

Suzanne C. Adair, Associate Vice President for Affirmative Action

When were you told about the action taken against you? (Date or Dates)

May 16, 2019

If you were given no reason, please check here.  ☐

Regarding how you were harmed, please identify a person or persons who were treated better than you. For example, as a **male employee** you were disciplined for a work violation, but a **female employee** who committed the same work violation was not disciplined.

Name of employee - First and Last (if known)
Suzanne Adair, Nicholas Jones, Susan Welch, Glenn Palmer, Peter Hatemi, Matthew Golder, Sona Golder, Donna Bahry, David Lowery, Lee Ann Banaszak, Vineeta Yadav

How is this person <u>different</u> from you? For example, what is his or her race, age, religion, etc.?

Race – all present as white except Adair who is black and Yadav who is Indian

Please explain **exactly** how this person was treated better or differently than you. Include dates.
(continued on separate page)

If you cannot identify someone who was treated better or differently than you, you need to describe an incident, statement, *etc.* which can be investigated, and which directly relates to why you were treated differently than someone else.

(continued on separate page

## 7. IF YOU CHECKED ONE OF THE FOUR DISABILITY CATEGORIES IN #4, ANSWER THE FOLLOWING QUESTIONS.

What is your disability? _____

How long have you had this disability and when did it start?

Do you still have this disability? ☐ yes ☐ no

If yes, how much longer do you expect to have the disability? _____

What major life activities do **you have great difficulty performing** because of your disability (Check all that apply.)

☐ Seeing   ☐ Hearing   ☐ Bending   ☐ Walking   ☐ Lifting   ☐ Stooping   ☐ Turning

☐ Climbing   ☐ Running   ☐ Talking   ☐ Standing for long periods

☐ Sitting for long periods   ☐ Caring for yourself   ☐ Thinking   ☐ Concentrating

☐ Relating to Others

Other Major Life Activities (**Be specific**) _____

If you have had a disability in the past, when did it start, and what date did it end? _____

If your employer treats you as if you are disabled: What disability do they think or believe you have? _____

Who are the people that are treating you as disabled (names and positions or titles)?

_____

Why do you think that these people think or believe you have a disability?

_____

How did your employer learn about your disability? _____

On what date did they learn about your disability? _____

Which specific manager/official/agent) learned about your disability? (include title or position)

_____

If you are related to someone who has a disability, what is your relationship to this person?

_____

What is this person's disability? _____

How and on what date did the employer learn about this person's disability?

Did you ask for an accommodation or assistance in order to do your job? ☐ yes   ☐ no

IF YES,
    (1) To whom did you make your request? _____
    (2) What date was the request made? _____
    (3) Explain what the accommodation or assistance was that you requested, and why.

_____

_____

Did the employer provide your requested accommodation or assistance? ☐ yes   ☐ no

If so, on what date? _____

Did the employer provide some other accommodation or assistance instead? ☐ yes   ☐ no

If yes, please explain. _____

_____

Did the employer deny your request for an accommodation or assistance?   ☐ yes   ☐ no

if so, who denied your request?

_____

What date was the request denied? _____

What reason was given to you for the denial? _____

_____

_____

8. **IF YOU CHECKED THAT YOU WERE HARASSED UNDER #3, ANSWER THE FOLLOWING QUESTIONS AS COMPLETELY AS POSSIBLE**.

Name the person(s) who harassed you: <u>LeeAnn Banaszak</u>

His or her position or job title <u>Head, Department of Political Science</u>

When were you harassed? Starting date <u>over the past 3-4 years</u> ending date _____

Is the harassment still continuing? ☒ yes   ☐ no

How often did the harassment occur? As well as possible, please indicate **date, month and year** of each incident and how often the harassing actions occurred.

☐ One time only _____   ☐ Once a day _____

☐ Several times daily _____

☐ multiple times/week _____

☑ multiple times/month _____

Please provide two or three examples of the harassment you experienced.
see attached document
_____
_____
_____

Did you consider any of the above acts of harassment to be especially severe and/or offensive?

☑ Yes ☐ No   If so, please explain why. Her harassment directly affects my prospect for promotion which she alone controls—as allowed by Dean Welch
_____
_____

Did the harassment have a negative or harmful effect on your work environment, health or personal life? If so, please explain:
Its very stressful and exacerbates physical problems that I have; and affects me psychologically
_____
_____

Did you complain to anyone about the harassment? ☑ Yes ☐ No

To whom did you complain?

Various supervisors, Dean Welch, Provost Jones, President Barron
| Name | Position or job title |

What date did you complain? _____

Did the harassment stop after you complained about it? ☐ Yes ☑ No

If it ended, on what date did it stop? _____

After you complained, were any other actions taken against you? (for example – discipline, discharge, etc.) ☑ Yes ☐ No

What were the actions? The Affirmative Action Complaint, Finding, and Punishment from Dean Welch

On what dates did they occur? May 16, 2019; May 23, 2019

Who took the action against you?  Suzanne Adair, Susan Welch, LeeAnn Banaszak

Did this person know that you complained about the harassment? ☑ Yes ☐ No
Please identify someone who is different than you and who was treated better:

Donna Bahry                                     Professor
| Name | Position or job title |

Reason they were treated better than you as discussed in #4 above: Because she is white

How were they treated better regarding the harassment?
                                          Her harassment is rewarded

9. **HAVE YOU BEEN INVOLVED IN ANY COURT ACTION REGARDING THIS MATTER? (COURT ACTION INITIATED BY YOU OR ANYONE ELSE.) IF SO, PLEASE SPECIFY THE COURT AND THE DATE FILED, TO THE BEST OF YOUR MEMORY.**

☐ Yes  ☑ No    Court _____  City _____  County _____  State _____  Date filed _____

10. **IF YOU HAVE FILED THIS COMPLAINT WITH ANY OTHER LOCAL, STATE OR FEDERAL AGENCY, PLEASE ANSWER THE FOLLOWING:**

Name of the agency with which you filed _____

Date of filing _____    Inquiry or Complaint number _____

11. **IF YOU WILL HAVE AN ATTORNEY REPRESENTING YOU ON THIS MATTER, PLEASE HAVE YOUR ATTORNEY SEND US A LETTER THAT CONFIRMS THIS. (YOU DO NOT NEED AN ATTORNEY TO FILE A COMPLAINT.)**

<u>**YOU MUST SIGN AND DATE THIS FORM BEFORE RETURNING IT.**</u>

☑ I hereby verify that the statements contained in this form are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 PA.C.S. Section 4904, relating to unsworn falsification to authorities.

**Signature** ___Errol A. Henderson___ /s/

**Date** 11/08/2019

**IF YOU HAVE OTHER INFORMATION YOU BELIEVE WE NEED TO KNOW TO HELP US UNDERSTAND YOUR COMPLAINT, PLEASE PROVIDE IT BELOW. FEEL FREE TO ATTACH ADDITIONAL PAGES TO DESCRIBE WHAT HAPPENED TO YOU AS COMPLETELY AS POSSIBLE.**

Please see attached.

Pennsylvania Human Relations Commission Employment Discrimination Questionnaire

6. Continued:

(Suzanne Adair)

The actions against me by the AAO and my department are in retaliation to a letter I sent to the Editor of the student newspaper, The Daily Collegian, detailing the hostile racist climate in the Political Science Department published on January 16, 2019 and roughly two months afterwards I was notified by Suzanne Adair that colleagues in the department were charging me with creating a hostile climate in the department. Suzanne Adair would not tell me their names so I could not address specific claims of specific people, and she dismissed without serious investigation that they were retaliating against me for the Op Ed i'd written. Its important to point out that all of the people that I directed concerns to or about were either by rank or position my superiors. Adair routinely dismissed my claims regarding discriminatory actions of my white supervisors. She would not consider witnesses from outside the department on my behalf. She minimized the extent to which the behavior of my white colleagues constituted hostility—even commenting that one white professor's use of the word "bitch" in a promotion and tenure meeting may have been "off colored" but was not hostile. She appeared to have her mind made up that she would find against me—even when she identified unassailable procedural errors of my supervisors that allowed them to make negative claims about me, she cast these in the light most favorable to them and against a finding of discriminatory treatment. The latter is evident in her second AAO finding letter to me, which I'll attach as well.

(Nicholas Jones)

One of the actions I complained about was that of the Provost, Nick Jones—to whom the AAO Director, Suzanne Adair, reports to directly—who opened a faculty meeting of the College of Liberal Arts with an "ethnic joke". I immediately objected to this "ethnic joke" by the Chief Academic Officer of the University; and I believe this has biased him towards my actions to redress issues of racial discrimination at Penn State.

At minimum, his appointee, Suzanne Adair, should recuse herself from any investigation regarding me by her office given the appearance of conflict between her boss/supervisor and me dating back to this episode which I recounted in the Op-Ed in the Daily Collegian (see website below for "Being Black at Penn State").

The Affirmative Action Office investigation of Suzanne Adair appears to have been initiated by mainly white colleagues in the Political Science Dept who have charged me, the only tenured African American professor in the Department's history, with creating a hostile climate in the Department.

The Affirmative Action Office has supported their claims (I still have not been told who all my accusers are except that most of them are white senior professors and administrators); so presumably this meeting is to discuss the actions the Dean and the Head and the senior professors and administrators in the department (who are overwhelmingly white) will take as a result of this "finding".

I have made complaints for more than a decade to the Affirmative Action Office regarding the racist discrimination i've been subjected to in the Political Science Department and have rarely even received a serious investigatory response--much less a finding in support of my claim.

(Susan Welch)

Moreover, i've made complaints to the Dean and Department Heads for well over a decade and the main response has been that they either cannot or will not respond to Affirmative Action complaints, or even complaints regarding discrimination that may not raise to that level. Dean Susan Welch continually utilizes discriminatory criteria in her treatment of me, and this is epitomized in the incamera meetings she has arranged on issues related to me regarding racial discrimination, including the meeting held regarding the recent AAO findings.

She has accused me to things I have not done—and have exacted punishments on me that are out of proportion to what she has done to white professors who have been found guilty of much graver offenses.

Now, this last secret meeting to which Dean Welch personally instructed me through email not to attend was arranged when overwhelmingly white professors most of whom have never sought Affirmative Action recourse for the fact that the Department has never had a black full professor of any gender and at that time had never tenured a black woman, but had the gall to argue that the only tenured African American professor in the Department's history 'created' the hostile climate in the Political Science Dept.

The climate was hostile when I got here: and I didn't create it. I've been trying to change it since I got here in 2002.

I am being sanctioned because I have spoken openly about it, such as here:

https://www.collegian.psu.edu/opinion/letters_to_editor/article_56c889e0-19d6-11e9-918c-4b0acfadb892.html


(Glenn Palmer) I raised the issue to the Head, LeeAnn Banaszak, of a senior white professor, Glenn Palmer, using the sexist slur, "bitch", in a meeting of the Promotion and Tenure committee on March 25, 2015 in which the committee was determining the status of a non-tenured woman professor in the Department-- during deliberations on the evaluation of a non-tenured faculty member, he openly referred to committee members as "sons of bitches" and/or made reference to a "son of a bitch". I immediately objected to the professor's use of this sexist slur in an official departmental meeting, as senior professors including Palmer, Plutzer, Lowery, Bahry, Monroe, Hatemi, among most of these tenured professors in the departmental meeting, laughed heartily (there were several of us, who did not laugh at all, but I was the only one who voiced an explicit objection, although at least one of the professors would later share their concerns about Palmer's use of the slur). This issue has not only been ignored, but administrators in the Department and two senior white male professors (Palmer, who used the slur, and Plutzer among those who laughed heartily) have expressed greater interest in to whom I might have advised that this egregious conduct has occurred (both notifying me through email), while the Head, Lee Ann Banaszak—who is married to Plutzer, advised me that the use of the slur, "bitch", was tantamount to the use of the

word "dear", and argued that I could be as culpable as Palmer for any previous use of the word "dear" in a professional setting (which she alleges I referenced doing, which is a lie). Moreover, the Head had no problem dispensing this "advice/guidance" regarding the commonalities between "bitch" and "dear", even as she would later note that as the Head she could not comment on the matter—or refer it to her superiors.

Nevertheless, I requested guidance from the Head on how to report my concern with the senior white professor's use of the sexist slur during our official meeting; and the Head, Banaszak, then accused me of harassing her by requesting such guidance. After repeated requests that she advise me as to how such a request for guidance from a subordinate to a superior could constitute harassment—and just what type of harassment she was alleging—she never told me. Interestingly, she constructed the black tenured professor's requests for guidance as "harassment" but minimized the white professor's use of the sexist slur "bitch" as approximating a term of endearment—i.e. evidently not connoting harassment at all. Also, it was around this time that she told me that she could not comment on the issue since it involved the P&T committee, and possibly her spouse; but this was only after she had provided "guidance" on the matter regarding how the use of the word "bitch" by the white senior professor was tantamount to the alleged use of the word "dear" by the black (in this case, junior) professor, me.

Palmer was promoted to the position of Director of Graduate Studies; and to my knowledge neither he nor others were subjected to charges of contributing to a hostile climate. Nor did the Dean Susan Welch hold secret meetings with department members—where Prof Palmer was excluded—to consider any charges against him—as she did in my case.

(Peter Hatemi)

Following a department meeting, Hatemi, who presents as white, made racially insensitive remarks to me stating that he was black and resented my reference to myself as the only African American tenured professor in the department's history. I emailed Dean Welch and asked her if I reported my status correctly and she said in the email that I was the only African American tenured professor in the department's history. When I relayed this to Prof. Hatemi I was told that he began to allege that I was creating a hostile climate by challenging his apparent lie (at least he hadn't told anyone else—including the Dean that he was 'black'). I have email and can provide specific dates.

Hatemi was promoted and did not receive any censure such as I have and I believe he has been one of the main persons in the department charging me with creating a hostile climate.

(Matthew Golder)

Golder made racist comments about an African American prospective hire—claiming he was not 'competent'. He then made a clearly biased evaluation of my teaching, for which I provided student comments for the class he evaluated that directly contradicted Golder's assessment. One of the most outlandish comments that Golder made was that I neglected to engage issues of

racism. As should be apparent from this complaint and the supporting documents, if its one thing I probably can not be accused of, its downplaying the issue of race. Nevertheless, not only did Lee Ann Banaszak utilize his evaluation of my teaching in her performance review of me, but when I raised the issue, she then ordered an additional 'unbiased' review of my teaching. To conduct that review she assigned Golder's wife, Sona Golder. This flagrant conflict of interest is not something applied to my white colleagues and is astounding on its face. Nevertheless, Dean Welch approved of this in her senior review.

Golder was also given a privileged assignment.

(Sona Golder)

Sona Golder was put forth for promotion by LeeAnn Banaszak when her record was clearly deficient to my own; but at the time Banaszak would not even allow my record to be considered.

Sona Golder was promoted to full professor

(Donna Bahry)

Donna Bahry is unequivocally the most racist member of the department. I have submitted previous affirmative action complaints about her conduct towards me—including her statement in my annual evaluation regarding black men as rapists. I have a document from a former Head of the Department who is white who sent the document to Suzanne Adair stating that he observed directly Donna Bahry's lying and her mistreatment of me. This Professor is no longer at Penn State, he is at UNC-Chapel Hill and he sent a letter to Adair regarding Donna Bahry which I believe Adair did not sufficiently consider. I'm attaching it here.

Donna Bahry has lied to university counsel. She has harassed me for years—and I have emails where I've notified my supervisors and senior professors regarding her misconduct and requesting their assistance—including Dean Susan Welch. Yet, Donna Bahry was allowed to be among those who claimed that I was harassing them and contributing to a hostile climate in the department.

Donona Bahry received an award from Dean Welch and also a privileged appointment unlike the punishment and censure that has been afforded me.

(David Lowery) On 11/4/2016, during a Promotion and Tenure meeting in the Dept of Political Science. Professor Lowery responded to a comment that I made to him regarding his interpretation of a University Policy by standing up and screaming that what I said was "bullshit" and storming out of the meeting--in mid-meeting, slamming the door loudly behind him. Neither I nor anyone else had used profanity in the meeting, or towards Professor Lowery. Professor Lowery made some derogatory hand gestures towards me as well.

Given that this is not the first of his hostile behaviors directed at me, I believe that this is a pattern of hostile acts meant to intimidate me professionally as well as to create an environment in which

my freedom of speech is stifled and one in which legitimate questions related to Professor Lowery's interpretations are not tolerated.

I have complained verbally and in writing about Prof. Lowery's odious behavior in the past, but to no avail--these complaints have been routinely dismissed by the Department Head; and although I've asked them to be forwarded to the Dean of the College of Liberal Arts, Susan Welch, I do not know if she has seen them, or if she would consider them even if she has seen them.

That a senior professor is allowed to conduct himself in this way towards more junior professors with impunity suggests that the Department and College condone such hostility and the climate it creates. Further, that someone of such limited self-control and lack of discernment is allowed to participate in decision-making at the Department level is likely to open the Department and College up to further justifiable complaints about the conduct of its senior professorship.

Moreover, that Professor Lowery, who presents as white, chooses to direct this egregious behavior to me, the only African American professor in the Department is particularly troubling.

In addition, given the relationships in the Political Science Dept and the College of Liberal Arts, I have ongoing concerns about retribution directed towards me for filing a complaint at all.

As in the case of Glenn Palmer, David Lowery was not sanctioned in the way that I have regarding creating a hostile climate and was given an additional prestige appointment in comparison to the censure and punishment I've been given.

(LeeAnn Banaszak)

Banaszak has used criteria for me that are different than those she uses for my white colleagues and this is evident with respect to my annual evaluations and I can supply these beyond the points I've discussed up to now. She should have been recused from evaluating me.

(Vineeta Yadav)

I believe has willfully misrepresented general comments—not comments made to or about her-- I've made in meetings in order to give an impression of hostility; and these misrepresentations have been challenged by black colleagues and others present. I think that this is encouraged by white supervisors so as to give the appearance that all of those who've made unfounded claims about my 'hostility' do not present as white.

# EXHIBIT 2

COMMONWEALTH OF PENNSYLVANIA

GOVERNOR'S OFFICE

PENNSYLVANIA HUMAN RELATIONS COMMISSION



Errol Henderson,
    Complainant

v.                      PHRC Case No. 201902277

Pennsylvania State University,
    Respondent

## AMENDED COMPLAINT

### JURISDICTION

1. Jurisdiction is pursuant to the Pennsylvania Human Relations Act 43 P.S. §§ 951-963.

### PARTIES

2. The Complainant herein is:

   Errol Henderson
   REDACTED

3. The Respondent herein is:

   Pennsylvania State University
   328 Boucke Building
   University Park, PA 16802

1

## UNDERLYING FACTS

4. The Respondent, on information and belief, employed four or more persons when the unlawful conduct alleged in this complaint occurred.

5. On or about June 2002, Respondent hired Complainant as an Associate Professor.

6. On or about January 16, 2019, Complainant submitted a letter, "Being Black at Penn State" to the student newspaper *The Daily Collegian*, detailing an alleged hostile, racist work environment in the Political Science Department.

7. On or about March 2019, Complainant was notified by Vice President for Affirmative Action Office (AAO), Suzanne Adair, that colleagues in the Political Science Department had filed a complaint, charging him with creating a hostile work environment in the department.

## Count 1

### Discipline (Written Warning)          Race - Discrimination

8. Paragraphs 1 through 7 are incorporated herein by reference as though set forth in full.

9. My protected class is race, African American.

10. On or about May 16, 2019, Respondent's AAO charged me with creating a hostile work environment in the Political Science Department.

11. On or about May 23, 2019, Dean of the College of the Liberal Arts, Susan Welch, issued a written warning to me.

12. Respondent's reason for discipline was because of the AAO finding that I had created a hostile work environment within my department in violation of University Policy AD91.

13. I believe that Respondent's actions were due to my protected class, because Caucasian colleagues, who committed offenses of racial discrimination and had complaints brought against them, were not thoroughly investigated by the Respondent's AAO, and were not issued discipline.

14. Based upon the foregoing, I allege that the respondent violated Section 5(a) of the Pennsylvania Human Relations Act 43 P.S. 951-963.

2

15. The Complainant prays that the Respondent be required to provide all appropriate remedies under § 9 of the Pennsylvania Human Relations Act.

## Count 2

**Discipline**                              **Retaliation - Discrimination**

16. Paragraphs 1 through 15 are incorporated herein by reference as though set forth in full.

17. On or about May 16, 2019, Respondent's AAO charged me with creating a hostile work environment in the Political Science Department.

18. On or about May 23, 2019, Dean of the College of Liberal Arts, Susan Welch, issued a written warning to me.

19. Respondent's reason for discipline was because of the AAO finding that I had created a hostile environment within my department in violation of University Policy AD91.

20. I believe that Respondent's actions were due to my protected class, because four (4) months after I reported a hostile, racist work environment, Respondent disciplined me.

21. Based upon the foregoing, I allege that the respondent violated Section 5(a) of the Pennsylvania Human Relations Act 43 P.S. 951-963.

22. The Complainant prays that the Respondent be required to provide all appropriate remedies under § 9 of the Pennsylvania Human Relations Act.

## DUAL FILING

22. This charge has been filed with the U.S. Equal Employment Opportunity Commission.

3

PHRC No. __201902277__

VERIFICATION

I hereby verify that the statements contained in this Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

19 MAY 2020
Date Signed

_____
Signature