## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERROL A. HENDERSON,<br><br>             Plaintiff,<br><br>         v.<br><br>THE PENNSYLVANIA STATE UNIVERSITY,<br><br>             Defendant. | Civil Action No. 4:21-cv-00872<br><br>(Honorable Matthew W. Brann)<br><br>*Electronically Filed* |

## BRIEF IN SUPPORT OF DEFENDANT THE PENNSYLVANIA STATE UNIVERSITY'S MOTION TO DISMISS PARTIALLY THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO RULE 12(B)(6)

# <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ........................................................................1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................3

    A.    Plaintiff's Employment History and Scholarship. ...........................3

    B.    Plaintiff Raised Concerns in 2014-2015 Regarding Some
          Isolated Comments and Incidents. ........................................4

    C.    Plaintiff Alleges That Once, Approximately Five Years Ago,
          the Head Told Him That She Would Not Nominate Him for
          Promotion to Full Professor Due to Deficiencies in His
          Teaching Performance. ......................................................5

    D.    In 2017, Plaintiff Raised a Complaint of Discrimination That
          Penn State Investigated and Determined Was Unfounded. .................5

    E.    Penn State Addresses Plaintiff's Continued Unprofessional
          Behavior Toward Colleagues and Teaching Deficiencies. .................6

    F.    Plaintiff Filed Two Charges of Discrimination, a Federal Court
          Complaint and an Amended Complaint Raising Claims of Race
          Discrimination, Hostile Work Environment, and Retaliation.............7

III.   STATEMENT OF QUESTIONS INVOLVED ...........................................8

IV.   LEGAL STANDARD ...........................................................8

V.    ARGUMENT........................................................................9

    A.    Plaintiff Cannot Assert Claims Against Penn State Under
          Section 1981. ..............................................................9

    B.    Plaintiff's Amended Complaint Fails to Establish That Any
          Alleged Failure to Nominate Him for Promotion to Full
          Professor Falls Within the Applicable Statutes of Limitations..........10

        1.    Plaintiff's Title VII and PHRA Failure to Nominate for
             Promotion Claims Are Untimely. .............................10

        2.    Plaintiff's Amended Complaint Lacks Factual
             Allegations That Penn State Failed to Nominate Him for
             Promotion Under the Statute of Limitations of Either
             Section 1983 or Section 1981, Rendering Such Claims
             Time-Barred. .........................................................12

i

## <u>TABLE OF CONTENTS</u>
### (continued)

<b>Page</b>

3.    This Court Should Reject Any Attempt by Plaintiff to Rescue His Failure to Nominate for Promotion Claims Through the Continuing Violation Doctrine............................15

C.    Plaintiff's Hostile Work Environment Claim Is Time-Barred, and, in Any Event, Fails to Satisfy the Minimum Pleading Standard. ...............................................................................16

D.    Plaintiff Has Had Multiple Opportunities to Plead Timely Claims but Has Failed to Do So, Demonstrating That Any Attempt to Amend Should Be Denied as Futile................................24

VI.    CONCLUSION.............................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackah v. Pa. Dep't of Corr.*,
  No. 08-0376, 2008 WL 11366478 (M.D. Pa. Nov. 14, 2008)...............17, 19, 23

*Anything to Rent Lease Wholesale, Inc. v. Hughesville Borough*,
  No. 16- 00895-MWB, 2017 WL 736859 (M.D. Pa. Feb. 24, 2017) .................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................8

*Blake v. Penn State Univ. Greater Allegheny Campus*,
  No. 09-1182, 2011 WL 841374 (W.D. Pa. Mar. 8, 2011)...................................9

*Botwe-Asamoah v. Univ. of Pittsburgh*,
  No. 13-817, 2013 WL 5806464 (W.D. Pa. Oct. 29, 2013)..................................9

*Bradshaw v. Pa. State Univ.*,
  No. 10-4839, 2011 WL 1288681 (E.D. Pa. Apr. 5, 2011) ..................................9

*Broomer v. Lock Haven Univ. of Pa.*,
  No. 09-0027, 2009 WL 10719078 (M.D. Pa. Nov. 9, 2009)......................12, 15

*Burgess v. Dollar Tree Stores, Inc.*,
  642 F. App'x 152 (3d Cir. 2016) .....................................................................22

*Burton v. Pa. Bd. of Prob. & Parole*,
  No. 02-2573, 2002 WL 1332808 (E.D. Pa. June 13, 2002) ..............................22

*Cardenas v. Massey*,
  269 F.3d 251 (3d Cir. 2001) ............................................................................17

*Dalton v. New Jersey*,
  No. 17-4094, 2018 WL 305326 (D.N.J. Jan. 5, 2018) ......................................21

*Douglas v. Nesbit*,
  No. 16-1836, 2017 WL 1021680 (M.D. Pa. Mar. 16, 2017)..............................13

*Feeney v. Jefferies & Co.*,
 No. 09-2708, 2010 WL 2629065 (D.N.J. June 28, 2010) ..................................22

*Fred v. Pa. Dep't of Transp.*,
 No. 12-2480, 2015 WL 3875911 (M.D. Pa. June 23, 2015) .............................13

*Gale v. UPMC Horizon*,
 No. 12-00617, 2013 WL 5534238 (W.D. Pa. Oct. 7, 2013).............................20

*Gharzouzi v. Nw. Human Servs. of Pa.*,
 225 F. Supp. 2d 514 (E.D. Pa. 2002)..................................................................20

*Goodman v. Norristown Area Sch. Dist.*,
 No. 20-1682, 2020 WL 5292051 (E.D. Pa. Sept. 4, 2020)...............................11

*Ingram v. Vanguard Grp., Inc.*,
 No. 14-3674, 2015 WL 4394274 (E.D. Pa. July 17, 2015)...............................16

*Jett v. Dallas Indep. Sch. Dist.*,
 491 U.S. 701 (1989)............................................................................................9

*Manley v. Mem'l Hosp. of Salem*,
 No. 11-2117, 2012 WL 32926 (D.N.J. Jan. 5, 2012) .......................................23

*McCall v. Butler Health Sys./Butler Mem'l Hosp.*,
 No. 13-130, 2013 WL 6253417 (W.D. Pa. Dec. 4, 2013)..................................19

*McCann v. Astrue*,
 293 F. App'x 848 (3d Cir. 2008) ......................................................................15

*McClain v. Connellsville Sch. Dist.*,
 No. 20-01485, 2021 WL 1737465 (W.D. Pa. May 3, 2021).............................14

*McGovern v. City of Philadelphia*,
 554 F.3d 114 (3d Cir. 2009) ...............................................................................9

*McSparran v. Pennsylvania*,
 No. 13-1932, 2014 WL 1371594 (W.D. Pa. Apr. 8, 2014) ...............................19

*Nat'l R.R. Passenger Corp. v. Morgan*,
 536 U.S. 101 (2002)...............................................................................15, 18, 19

*O'Connor v. City of Newark*,
   440 F.3d 125 (3d Cir. 2006) ........................................................15, 18

*Ocasio v. Lehigh Valley Family Health Ctr.*,
   92 F. App'x 876 (3d Cir. 2004) ..........................................................17

*Parks Miller v. Ruest*,
   No. 15-1754-MWB, 2016 WL 2752655 (M.D. Pa. May 11, 2016)
   (Brann, J.), *aff'd sub nom. Miller v. County of Centre*, 702 F.
   App'x 69 (3d Cir. 2017) .....................................................................24

*Real-Loomis v. Bryn Mawr Tr. Co.*,
   No. 20-0441, 2021 WL 1907487 (E.D. Pa. May 12, 2021) ...............21

*Rich v. State*,
   294 F. Supp. 3d 266 (D.N.J. 2018)....................................................20

*Riley v. Del. River & Bay Auth.*,
   457 F. Supp. 2d 505 (D. Del. 2006)...................................................20

*Thomas v. Pocono Mountain Sch. Dist.*,
   No. 10-1946, 2011 WL 2471532 (M.D. Pa. June 21, 2011) ........12, 23

*Verdin v. Weeks Marine Inc.*,
   124 F. App'x 92 (3d Cir. 2005) ..........................................................17

*Wash.-Morris v. Bucks Cty. Transp., Inc.*,
   No. 17-3631, 2018 WL 2021081 (E.D. Pa. May 1, 2018) ...........10, 16

*Wilson v. Kerestes*,
   No. 12-0884-MWB, 2012 WL 3614042 (M.D. Pa. Aug. 21, 2012) .................25

**Statutes**

43 Pa. Stat. Ann. § 959(h)........................................................................11

## I.    __INTRODUCTION__

The Pennsylvania State University ("Penn State") is committed to building an inclusive, diverse, and respectful environment for the thousands of faculty, staff, and students in its community.  Increasing diversity and sustaining an environment of inclusion and respect are key to Penn State's ability to deliver on its values and provide its community with the best educational and work environment possible. Understanding the importance of diversity and inclusion, Penn State encourages the members of its community to speak up and engage in productive discussions that help Penn State advance these priorities.

Dr. Errol Henderson ("Plaintiff") has been recognized, by supervisors and colleagues alike, for his research, publications, and scholarly accomplishments.  He remains a valued member of his department, but his career has been plagued by decades-long concerns regarding his performance in the classroom and treatment of students and colleagues.  Since his hire in 2002, students have frequently raised concerns about Plaintiff's ambiguous grading expectations, arbitrary issuances of failing grades, and condescending and bullying treatment both inside and outside of the classroom.  Similarly, tenured and nontenured faculty members of varying races and backgrounds have raised allegations about Plaintiff's belittling and inappropriate behavior, and that his conduct during meetings and other events has

become so disruptive that it has prevented them from productively addressing other important department matters.

Penn State has invested significant time and energy to help Plaintiff improve both his classroom performance and his interactions in the workplace.  Plaintiff, however, has been unwilling to accept the feedback.  He has accused many of his students, department heads, deans, and other colleagues of being racist.  When he raised these accusations through appropriate channels, Penn State took them seriously, investigated, and ultimately determined that the complaints he filed were unfounded.

Through his Amended Complaint, Plaintiff challenges Penn State's efforts to address his performance, claiming that these efforts were discriminatory and/or retaliatory.  More specifically, Plaintiff alleges that Penn State violated Section 1981, Title VII, and the Pennsylvania Human Relations Act ("PHRA") when it did not nominate him for promotion to Full Professor several years ago and, in May 2019, issued him "formal letter[s] of discipline" allegedly because of his race and in retaliation for raising complaints of discrimination.  Plaintiff also claims that Penn State has subjected him to a racially hostile work environment over the years.  Most of Plaintiff's claims as pled are not legally viable, and this Court should dismiss them.  As explained below:

- Plaintiff's Section 1981 claims cannot survive because Section 1981 does not confer a private right of action against state actors, such as Penn State.

- All claims premised on Plaintiff's allegation that he was not nominated for promotion to Full Professor are time-barred and should be dismissed.

- Plaintiff fails to state a hostile-work-environment claim because his Amended Complaint does not include any timely allegations demonstrating that he was subjected to a legally actionable hostile environment because of his race.

Accordingly, all claims in Plaintiff's Amended Complaint—except for his Title VII and PHRA discrimination and retaliation claims based on the May 2019 letters—should be dismissed.  And, since Plaintiff has had ample opportunity to assert the factual allegations necessary to state his claims through his Amended Complaint, any attempt to further amend should be denied as futile.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

### A.   Plaintiff's Employment History and Scholarship.

In 2002, Penn State hired Plaintiff as an Associate Professor in the Department of African and African American Studies and the Political Science Department ("PLSC Department"), granting him tenure in both.  Am. Compl. ¶ 19.  Throughout Plaintiff's time at Penn State, his research and scholarship have focused on world

---

[1] Penn State accepts the allegations in the Amended Complaint as true—as it must under Federal Rule of Civil Procedure ("Rule") 12(b)(6)—only for purposes of this Motion, but generally denies Plaintiff's allegations that it subjected him to discrimination, harassment, or retaliation.

politics, the analysis of war, and Africana/Black studies, among other subjects. *Id.* ¶¶ 20, 24. The strength of Plaintiff's scholarship has been recognized both internally at Penn State and through external awards, grants, and fellowships. *Id.* ¶¶ 22-25, 39-40.

## B.  Plaintiff Raised Concerns in 2014-2015 Regarding Some Isolated Comments and Incidents.

According to Plaintiff, he witnessed and raised concerns about some isolated comments and incidents that allegedly occurred six or more years ago. *See id.* ¶¶ 27-29, 33-34, 36-37. For example, Plaintiff alleges that, at some unidentified time before 2014, a former Head of the PLSC Department ("Head") made an inappropriate comment to him about an experience that she allegedly had at another university with Black men. *See id.* ¶ 29. At another unidentified time sometime between 2014 and 2015, Plaintiff claims that a faculty member used the word "bitch" during a tenure committee meeting. *See id.* ¶ 33. Additionally, he alleges that in 2015, the Provost made an "offensive and stereotypical remark regarding an individual's ethnicity during an address to many faculty members." *See id.* ¶ 34. Finally, according to Plaintiff, at another unidentified time around 2015, the Head accused *him* of harassing her. *See id.* ¶ 36.

**C.   Plaintiff Alleges That Once, Approximately Five Years Ago, the Head Told Him That She Would Not Nominate Him for Promotion to Full Professor Due to Deficiencies in His Teaching Performance.**

In approximately 2015, Plaintiff demonstrated satisfactory scholarship, including authoring a book titled *African Realism?  International Relations Theory and Africa's Wars in the Postcolonial Era.  See id.* ¶ 40.  Shortly thereafter, Plaintiff claims that he "sought [the Head's] guidance in formally applying for a promotion to Full Professor."  *Id.*  He also claims that the Head informed him that because of his continued and unaddressed deficiencies in the classroom and teaching performance, she would not nominate him for promotion to Full Professor.[2]  *Id.* ¶¶ 39-40, 42.

**D.   In 2017, Plaintiff Raised a Complaint of Discrimination That Penn State Investigated and Determined Was Unfounded.**

Around December 2017, Plaintiff complained to Penn State's Associate Vice President for Affirmative Action ("AVP for AAO") that the Head would not consider him for promotion to Full Professor and had engaged in "other discriminatory actions."  *Id.* ¶ 43.  After an investigation, the AVP for AAO informed Plaintiff that her investigation determined that there was no evidence of discrimination.  *Id.* ¶ 44.

---

[2]     Penn State does not concede that Plaintiff ever applied for a promotion to Full Professor or that he was qualified for such a promotion had he been nominated.

**E.   Penn State Addresses Plaintiff's Continued Unprofessional Behavior Toward Colleagues and Teaching Deficiencies.**

In December 2018 and the months thereafter, multiple faculty members within the PLSC Department raised concerns to the AVP for AAO that Plaintiff was engaging in unprofessional and inappropriate behavior. *Id.* ¶¶ 47-48. After investigating these complaints, the AVP for AAO informed Plaintiff via letter, on or about May 16, 2019, that there was evidence that he had engaged in behavior that was harassing and created a hostile environment for his colleagues in the PLSC Department, in violation of Penn State policy. *Id.* ¶¶ 49-50.

On or about May 23, 2019, the then-Dean of Penn State's College of the Liberal Arts sent Plaintiff a letter addressing two separate issues. First, as a result of the AAO's determination that Plaintiff's behavior created a hostile environment in the PLSC Department, Plaintiff was not permitted to attend departmental meetings or events or serve on departmental committees through June 20, 2021. *Id.* ¶¶ 51-56. Second, due to Plaintiff's long-standing teaching deficiencies—which had come up again in his April 2019 Senior Faculty Review—Plaintiff was released from teaching for the spring semester 2020 so that he could focus on improving his teaching skills, working and meeting with a mentor or coach, and reworking his syllabi and course plans. *Id.*

**F.    Plaintiff Filed Two Charges of Discrimination, a Federal Court Complaint and an Amended Complaint Raising Claims of Race Discrimination, Hostile Work Environment, and Retaliation.**

On November 12, 2019, Plaintiff filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and Equal Employment Opportunity Commission ("EEOC") alleging that he was discriminated against and harassed on account of his race (African American) and gender (male). *Id.*, Ex. 1. Almost eleven months earlier, in January 2019, Plaintiff wrote an Op-Ed in the student-run newspaper, describing the incidents about which he had complained to the AAO and opining that Penn State needed to improve its efforts to recruit, retain, and promote diverse faculty. *Id.* ¶¶ 46-48. On May 20, 2020, Plaintiff filed an Amended Charge of Discrimination with the PHRC and EEOC, alleging that the May 16 and May 23, 2019 letters were (1) discriminatory based on his race, and (2) retaliation for raising concerns of a "hostile racist work environment" in his January 2019 Op-Ed. *See id.* ¶ 14, Ex. 2 (Counts I, II).

On May 12, 2021, Plaintiff filed his original complaint (Dkt. 001), claiming that Penn State discriminated against him because of his race, retaliated against him for complaining of discrimination, and subjected him to a racially hostile work environment in violation of Section 1981 and the PHRA. On July 19, 2021, Plaintiff filed an almost identical Amended Complaint, this time adding claims under Title VII. *See generally* Am. Compl.

Plaintiff remains an Associate Professor with tenure, and Penn State is welcoming him back to the classroom this fall. *Id.* ¶ 55.

## III.   <u>STATEMENT OF QUESTIONS INVOLVED</u>

- Should this Court dismiss Plaintiff's Section 1981 claims because Section 1981 does not confer a private right of action against state actors, such as Penn State?

   **Suggested Answer: Yes.**

- Should this Court dismiss all claims premised on Plaintiff's allegation that he was not nominated for promotion to Full Professor because they are time-barred?

   **Suggested Answer: Yes.**

- Should this Court dismiss Plaintiff's hostile-work-environment claims because his Amended Complaint does not include timely allegations demonstrating that he was subjected to a legally actionable hostile environment because of his race?

   **Suggested Answer: Yes.**

- Should this Court deny any attempt by Plaintiff to further amend his Amended Complaint because further amendment would be futile?

   **Suggested Answer: Yes.**

## IV.   <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This Court is familiar with the pleading requirements, so Penn State will not burden the Court with a more fulsome discussion here.

## V.    ARGUMENT

### A.    Plaintiff Cannot Assert Claims Against Penn State Under Section 1981.

Plaintiff's Section 1981 claims fail as a matter of law because Section 1981 does not confer a private right of action against state actors.  It is well settled in the Third Circuit that Section 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989); *see McGovern v. City of Philadelphia*, 554 F.3d 114, 120-21 (3d Cir. 2009) (affirming dismissal of Section 1981 claims because "§ 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units").

Courts within the Third Circuit have repeatedly held that Section 1983 is the exclusive remedy for claims asserted against Penn State and other similar state-related universities that otherwise would be brought under Section 1981.  *See, e.g.*, *Bradshaw v. Pa. State Univ.*, No. 10-4839, 2011 WL 1288681, at *1 (E.D. Pa. Apr. 5, 2011) (stating that Penn State is a "clearly established . . . state actor" for purposes of Section 1983); *Botwe-Asamoah v. Univ. of Pittsburgh*, No. 13-817, 2013 WL 5806464, at *4 (W.D. Pa. Oct. 29, 2013) (dismissing Section 1981 claims against the university because "a state university without question is a state actor"); *Blake v. Penn State Univ. Greater Allegheny Campus*, No. 09-1182, 2011 WL 841374, at

9

*5 (W.D. Pa. Mar. 8, 2011) ("[T]he Third Circuit has held that no implied right of action exists against state actors under 42 U.S.C. § 1981.").

Plaintiff has no remedy against Penn State under Section 1981. Therefore, Plaintiff's Section 1981 claims must be dismissed.

**B.      Plaintiff's Amended Complaint Fails to Establish That Any Alleged Failure to Nominate Him for Promotion to Full Professor Falls Within the Applicable Statutes of Limitations.**

Plaintiff's claim for failure to nominate him for promotion is time-barred and must be dismissed. He has not alleged any facts demonstrating that Penn State's alleged failure to nominate him for promotion to Full Professor occurred within the statute of limitations periods applicable to his claim.[3]

1.      <u>Plaintiff's Title VII and PHRA Failure to Nominate for Promotion Claims Are Untimely.</u>

Plaintiff does not allege any failure to nominate him for promotion to Full Professor within Title VII's or the PHRA's statute of limitations, and, accordingly, such claims must be dismissed as untimely. To assert a timely discrimination or retaliation claim under Title VII, Plaintiff must file a charge of employment discrimination with the EEOC within 300 days of the alleged discriminatory act. *See, e.g.*, *Wash.-Morris v. Bucks Cty. Transp., Inc.*, No. 17-3631, 2018 WL 2021081,

---

[3]      Plaintiff's Amended Complaint is vague as to the alleged actions or decisions he is challenging as discriminatory and/or retaliatory. To the extent Plaintiff is challenging a discrete action other than failure to nominate him for promotion to Full Professor that occurred prior to the applicable limitations' periods discussed below, such a claim should be dismissed as time-barred for the same reasons set forth in Sections V.B.1-3, *infra*.

at *5 (E.D. Pa. May 1, 2018) ("To bring suit under Title VII, a claimant . . . must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice."). The time for filing a charge under the PHRA is shorter. To timely assert claims under the PHRA, Plaintiff had to file his charge with the PHRC within 180 days of the alleged unlawful act. *See* 43 Pa. Stat. Ann. § 959(h); *Goodman v. Norristown Area Sch. Dist.*, No. 20-1682, 2020 WL 5292051, at *3 (E.D. Pa. Sept. 4, 2020) (dismissing with prejudice plaintiff's failure to hire claim as untimely when plaintiff failed to file his charge within 180 days of the allegedly discriminatory act).

Plaintiff failed to meet either requirement. He dual-filed a Charge of Discrimination with the EEOC and PHRC on November 12, 2019. *See* Am. Compl., Ex. 1. Thus, for Plaintiff to have timely discrimination or retaliation claims, the failure to nominate him for promotion (or any other alleged discrete act) must have occurred ***on or after January 16, 2019*** for Title VII, or ***on or after May 16, 2019*** for the PHRA. But Plaintiff's Amended Complaint fails to allege any failure to nominate him for promotion during these time frames. Plaintiff's Amended Complaint is notably (perhaps intentionally) vague about when the alleged failure to nominate him for promotion occurred. In fact, he does not allege any particular date that he was considered for and/or denied a promotion, let alone a date that falls within the required limitations periods. *See generally* Am. Compl. But, by

11

Plaintiff's own pleading, there is no question that it had to have allegedly occurred *before* he raised a complaint about the alleged failure to nominate him for promotion in December 2017. *Id.* ¶¶ 40-43.

With no allegations to support a timely claim under Title VII or the PHRA regarding a failure to nominate Plaintiff for promotion, his claims must be dismissed.

> 2.   <u>Plaintiff's Amended Complaint Lacks Factual Allegations That Penn State Failed to Nominate Him for Promotion Under the Statute of Limitations of Either Section 1983 or Section 1981, Rendering Such Claims Time-Barred.</u>

As discussed above, Plaintiff's claims under Section 1981 must be dismissed. *See* Section V.A, *supra*. But even if Plaintiff's Section 1981 claims concerning the failure to nominate him for promotion somehow could survive this Motion, or if Plaintiff were to attempt and permitted to replead them under Section 1983, they still would be time-barred.

Because Section 1983 is the exclusive remedy for Plaintiff's Section 1981–derived claims against Penn State, courts within the Third Circuit—including this Court—have applied Section 1983's two-year statute of limitations. *See Broomer v. Lock Haven Univ. of Pa.*, No. 09-0027, 2009 WL 10719078, at *5 (M.D. Pa. Nov. 9, 2009) (applying two-year statute of limitations to failure to promote claim and reasoning that "[t]he statute of limitations period applicable to § 1983 claims is the applicable state law statute of limitations for personal injury torts"); *see also Thomas v. Pocono Mountain Sch. Dist.*, No. 10-1946, 2011 WL 2471532, at *9 (M.D. Pa.

June 21, 2011) (stating, after dismissing plaintiff's Section 1981 claim, that "[i]n Pennsylvania, a two year statute of limitations applies to § 1983 actions"); *Fred v. Pa. Dep't of Transp.*, No. 12-2480, 2015 WL 3875911, at *9 (M.D. Pa. June 23, 2015) (rejecting plaintiff's attempt to "seek refuge" under Section 1981's four-year statute of limitations by amending the complaint to add a Section 1981 claim to his Section 1983 claim against a governmental unit).

Given that Section 1983 is Plaintiff's exclusive remedy, this Court should follow its prior holdings and apply a two-year statute of limitations to any Section 1981 claims that Plaintiff might attempt to replead under Section 1983.  Plaintiff filed his initial complaint on May 12, 2021.  *See* Compl.  As such, all Section 1983 claims based on events that allegedly occurred prior to May 12, 2019—two years prior to the commencement of this action—should be time-barred.  Here, by Plaintiff's own pleading, the alleged conversation in which he was told he would not be considered for promotion had to have occurred prior to December 2017.  Am. Compl. ¶¶ 37-39, 45, 58.  Accordingly, Plaintiff's claims are time-barred.

Other courts in the Third Circuit, however, have applied a four-year statute of limitations to certain Section 1983 claims when Section 1981's longer, catch-all, four-year statute of limitations would apply to those claims had they been brought under Section 1981.  *See, e.g.*, *Douglas v. Nesbit*, No. 16-1836, 2017 WL 1021680,

at *5 (M.D. Pa. Mar. 16, 2017) (applying Section 1981's statute of limitations to a wrongful discharge discrimination claim brought via Section 1983).

However, this is of no consequence in this case. Even a four-year statute of limitations cannot save Plaintiff's failure to nominate him for promotion claim. His Amended Complaint contains no allegations that any alleged failure to nominate him for promotion occurred on or after May 12, 2017 (four years prior to the commencement of this action). Plaintiff merely alleges that he *complained* in December 2017 about not being considered for promotion. Am. Compl. ¶ 43. He says nothing about when he was actually told he would not be considered (perhaps out of concern that it would confirm that these claims indeed are untimely). Vague suggestions in the Amended Complaint that this occurred sometime between 2015 and 2017 are not enough for Plaintiff to meet his pleading burden. *Id.* ¶¶ 38-43; *see, e.g.*, *McClain v. Connellsville Sch. Dist.*, No. 20-01485, 2021 WL 1737465, at *3 (W.D. Pa. May 3, 2021) (granting a motion to dismiss failure to promote claims as untimely where the amended complaint alleged generally that "Defendant passed over Plaintiff for promotions 'consistently' and on three occasions between 2015 and October 2019, but it does not provide any additional temporal specificity").

As such, Plaintiff has failed to plead that he has a timely claim whether brought under Section 1981 or Section 1983 and without regard to whether a two-year or four-year statute of limitations would apply.

14

3.      This Court Should Reject Any Attempt by Plaintiff to Rescue His
        Failure to Nominate for Promotion Claims Through the
        Continuing Violation Doctrine.

Plaintiff's sweeping allegations that Penn State failed to consider or nominate

him for promotion over a vague, extended period of time cannot save his untimely

claims because the "continuing violation" doctrine is inapplicable to discrete acts of

discrimination or retaliation.

A failure to promote clearly is a discrete act. *Nat'l R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as termination, failure to

promote, denial of transfer, or refusal to hire are easy to identify[, and e]ach incident

. . . constitutes a separate actionable unlawful employment practice."); *O'Connor v.*

*City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (adopting *Morgan*'s "non-

exhaustive list of discrete acts for which the limitations period runs from the act[,

including]: termination, failure to promote, denial of transfer, refusal to hire,

wrongful suspension, wrongful discipline, denial of training, [and] wrongful

accusation").  The continuing violation doctrine under *Morgan* does not permit a

plaintiff to combine discrete acts into a single unlawful practice for purposes of

asserting a timely claim.  *See McCann v. Astrue*, 293 F. App'x 848, 850 (3d Cir.

2008) (affirming decision that the continuing violation doctrine does not apply to

failure to promote claims); *Broomer*, 2009 WL 10719078, at *5 ("Plaintiff's

argument that [discrete, identifiable] claims can be aggregated into a continuing

violation and thus they may be shoe-horned into the statute of limitations period is unavailing.").

Plaintiff cannot save his untimely failure to nominate for promotion claims based on a discrete act by arguing that they are part of a continual attempt to deny him a promotion as he vaguely alleges in his Amended Complaint. Am. Compl. ¶¶ 38-43, 45, 58. Courts routinely have rejected such arguments. *See, e.g.*, *Washington-Morris*, 2018 WL 2021081, at *6-7 (holding that the continuing violation doctrine did not apply to a "series of related, discriminatory events that took place over the course of several years," and, therefore, plaintiff could not save his discrimination claims based on untimely discrete acts); *Ingram v. Vanguard Grp., Inc.*, No. 14-3674, 2015 WL 4394274, at *11 (E.D. Pa. July 17, 2015) (dismissing untimely allegations of discrimination because "a discrete discriminatory act that occurred outside the statute of limitations period cannot support a lawsuit, either individually or as part of a hostile work environment claim"). This Court should, too.

### C.    Plaintiff's Hostile Work Environment Claim Is Time-Barred, and, in Any Event, Fails to Satisfy the Minimum Pleading Standard.

Plaintiff's Amended Complaint fails to allege a timely claim for a hostile work environment or sufficient allegations to state such a claim. To state a racially hostile work environment claim, Plaintiff's Amended Complaint must set forth factual allegations showing that: "(1) he suffered intentional discrimination because of his

16

race; (2) the discrimination was severe or pervasive; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." *Ackah v. Pa. Dep't of Corr.*, No. 08-0376, 2008 WL 11366478, at *6 (M.D. Pa. Nov. 14, 2008) (dismissing Title VII and PHRA hostile work environment claims predicated solely on conclusory allegations that the plaintiff was "subjected to a pattern o[f] harassing actions" and various discrete discriminatory acts that cannot be "aggregate[d] . . . into a separate hostile work environment claim" (citing *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001))).[4]

Plaintiff's claim rests on vague and conclusory allegations of harassment, with reference to isolated events that either are undated or were not directed to Plaintiff or related to his race (or both).  Plaintiff alleges:

- At some unspecified time, the former Head made an allegedly inappropriate comment to Plaintiff about an experience she allegedly had at another university with Black men (Am. Compl. ¶ 29);

- At some unspecified time, a white faculty member used the word "bitch" during a tenure committee meeting "while discussing a potential candidate" (*id.* ¶ 33);

- In 2015 (well outside any statute of limitations period, discussed *supra*), Plaintiff complained that the Provost made "an offensive and stereotypical

---

[4]     With regard to a "hostile work environment claim, the same standard used under Title VII applies under Section 1981." *Verdin v. Weeks Marine Inc.*, 124 F. App'x 92, 96 (3d Cir. 2005); *Ocasio v. Lehigh Valley Family Health Ctr.*, 92 F. App'x 876, 879 (3d Cir. 2004).

remark regarding an individual's ethnicity during an address to many faculty members" (*id.* ¶ 34); and

- At some unspecified time, the Head accused Plaintiff of "harassing" her by "continually raising his complaints about actions taken by his white colleagues to the detriment of racial minorities and women" (*id.* ¶ 36).

Even taking these allegations in a light most favorable to Plaintiff, his hostile work environment claims fail.

***First***, none of the incidents Plaintiff identifies in support of his purported hostile work environment claim fall within the statute of limitations periods. *O'Connor*, 440 F.3d at 127 (providing that under *Morgan*, untimely incidents of harassment can be aggregated to support a hostile work environment claim only when "they are linked in a pattern of actions which continues into the applicable limitations period"). For his claim to be timely, at least one incident forming the pattern of harassing conduct must have occurred on or after May 16, 2019 for purposes of the PHRA and on or after January 16, 2019 for purposes of Title VII. *See* Sections V.B.1, V.B.3, *supra*. If Plaintiff were to bring a Section 1983 claim, such an incident would need to have occurred on or after May 12, 2019 using a two-year statute of limitations (or on or after May 12, 2017 using a four-year statute of limitations). *See* Section V.B.2, *supra*.

Notably, for three of the four incidents described in the Amended Complaint, Plaintiff never alleges when they purportedly occurred. The only date he does reference is 2015—long before any applicable statute of limitations period. In any

event, the chronology of Plaintiff's Amended Complaint establishes that each of these alleged undated instances of harassment would have occurred well before 2017. Am. Compl. ¶¶ 29-39. Because Plaintiff fails to allege *any* instance of racial harassment within the statute of limitations period for any of the statutes at issue, his hostile work environment claims fail. *See, e.g.*, *McSparran v. Pennsylvania*, No. 13-1932, 2014 WL 1371594, at *13 (W.D. Pa. Apr. 8, 2014) (dismissing hostile work environment claims based on untimely harassment claims).

Additionally, Plaintiff cannot rely on the May 16 and 23, 2019 letters to save his time-barred hostile work environment claim. Plaintiff alleges that these letters were "formal letter[s] of discipline"—which are discrete acts under *Morgan*. *See* Section V.B.3, *supra*; Am. Compl. ¶¶ 51, 53-56. It is well settled that Plaintiff cannot rely on alleged timely discrete acts to save an otherwise untimely hostile work environment claim. *See, e.g.*, *McCall v. Butler Health Sys./Butler Mem'l Hosp.*, No. 13-130, 2013 WL 6253417, at *8 (W.D. Pa. Dec. 4, 2013) (dismissing hostile work environment claim and holding that plaintiff could not rely on discrete acts within statutory period to form basis of otherwise untimely hostile work environment claim); *Ackah*, 2008 WL 11366478, at *7 (dismissing plaintiff's Title VII and PHRA hostile work environment claims because plaintiff's "allegations of discriminatory evaluations and denial of training and promotion are discrete acts" that could not be aggregated to form the basis of a hostile work environment claim).

With no allegations in Plaintiff's Amended Complaint to support a timely hostile work environment claim, his hostile work environment claims must be dismissed (and he should be precluded from asserting such a claim under Section 1983). *Riley v. Del. River & Bay Auth.*, 457 F. Supp. 2d 505, 512 (D. Del. 2006) (dismissing hostile work environment claim where allegations of harassment underlying claim did not occur within limitations period even though failure to promote and discriminatory-pay claims were timely); *Gale v. UPMC Horizon*, No. 12-00617, 2013 WL 5534238 (W.D. Pa. Oct. 7, 2013) ("Plaintiff may not group these incidents together under the heading 'hostile work environment,' thereby allowing him to revive otherwise stale claims" (citations omitted)).

***Second***, even if Plaintiff's hostile work environment claims were premised upon timely allegations, which they are not, almost all of the allegedly harassing comments he relies upon have no connection to him or to his race. "Mistreatment that is not motivated by the plaintiff's protected class does not create a hostile [work] environment." *Gharzouzi v. Nw. Human Servs. of Pa.*, 225 F. Supp. 2d 514, 534 (E.D. Pa. 2002). Thus, a hostile work environment claim fails if the plaintiff fails to plead facts to allege that the hostile conduct occurred *because of* his protected status. *Rich v. State*, 294 F. Supp. 3d 266, 282 (D.N.J. 2018) ("Common sense dictates that there is no . . . violation if the same conduct would have occurred regardless of the plaintiff's [protected characteristic].").

20

Here, Plaintiff claims that he was subjected to a racially hostile work environment when he heard a faculty member use the word "bitch" at an undated faculty meeting and heard an "offensive and stereotypical remark about an individual's ethnicity" at a public address to faculty members. *See* Am. Compl. ¶¶ 33, 34. But, neither of these alleged comments were directed toward Plaintiff or had any connection to Plaintiff's race. Where Plaintiff failed to plead any facts demonstrating that he was subjected to a hostile work environment *because of* his race, his claims should be dismissed. *See, e.g.*, *Real-Loomis v. Bryn Mawr Tr. Co.*, No. 20-0441, 2021 WL 1907487, at *5 (E.D. Pa. May 12, 2021) (dismissing Title VII and PHRA gender and age hostile work environment claim because plaintiff's complaint was devoid of allegations indicating she was subject to unfair treatment based on gender, and the only purportedly harassing age-related comment "was in no way directed toward Plaintiff or any other employee"); *Dalton v. New Jersey*, No. 17-4094, 2018 WL 305326, at *9-10 (D.N.J. Jan. 5, 2018) (dismissing hostile work environment claim because allegedly discriminatory conduct "bears no relation to [plaintiff's] protected status").

**Third**, Plaintiff's allegations fail to properly plead a severe and pervasive hostile work environment, which further requires that those claims be dismissed. To sufficiently plead a hostile work environment claim, Plaintiff must allege facts sufficient to show that "the workplace is permeated with discriminatory

intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to [alter the conditions of the victim's employment and] create an abusive working environment." *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x 152, 155 (3d Cir. 2016) (affirming dismissal of Title VII and PHRA hostile work environment claims).

Here, Plaintiff points to a total of four alleged comments, most of which were not directed toward him and do not relate to his race, from more than five years ago. *See* Am. Compl. ¶¶ 29, 33, 34, 36.  When isolated, stray comments are nowhere near severe or pervasive, as they are in this case, courts in the Third Circuit regularly dismiss hostile work environment claims based on similarly sparse factual allegations.  *See, e.g.*, *Feeney v. Jefferies & Co.*, No. 09-2708, 2010 WL 2629065, at *5 (D.N.J. June 28, 2010) (dismissing hostile work environment claims because plaintiff failed to specifically allege when and how frequently alleged harassment comments occurred, and isolated incidents of discrimination are insufficient); *Burton v. Pa. Bd. of Prob. & Parole*, No. 02-2573, 2002 WL 1332808, at *3 (E.D. Pa. June 13, 2002) (dismissing hostile work environment claim because plaintiff's "accusations contained in the complaint fail[ed] as a matter of law to amount to a hostile or abusive work environment").

***Finally***, Plaintiff's conclusory assertions that he was subjected to a hostile work environment or observed some unspecified instances of "bias" cannot state a claim for a hostile work environment.  *See, e.g.*, Am. Compl. ¶ 26 (alleging that

Plaintiff witnessed a "series of comments and actions . . . that reflected systemic and institutional biases"), ¶ 27 (alleging that Plaintiff complained about a "racially hostile work environment"), ¶ 32 (alleging generally that Plaintiff witnessed "unprofessional and biased behavior of several of his white colleagues"), ¶¶ 64-65 (alleging generally that Plaintiff was subjected to a "hostile work environment"). Courts regularly hold that such conclusory allegations are insufficient to survive a motion to dismiss. *See, e.g.*, *Manley v. Mem'l Hosp. of Salem*, No. 11-2117, 2012 WL 32926, at *1 (D.N.J. Jan. 5, 2012) (dismissing Title VII hostile work environment claim and rejecting plaintiff's allegations that "[d]efendant . . . discriminated against plaintiff" and "created a hostile work environment, based on plaintiff's race," as "mere legal conclusions" that the court was not required to accept as true "due to the utter lack of specificity"); *Thomas*, 2011 WL 2471532, at *8 (dismissing Title VII hostile work environment claim that was based "primarily on conclusory assertions"); *Ackah*, 2008 WL 11366478, at *7 (dismissing Title VII and PHRA hostile work environment claims based on allegations that plaintiff was subjected to "repeated harassing meetings," because such a "bare conclusory assertion, which merely mimics the elements of the claim, does not state a cause of action for hostile work environment"). Untimely and based on a few alleged, isolated comments, Plaintiff's hostile work environment claims should be dismissed.

23

### D.  Plaintiff Has Had Multiple Opportunities to Plead Timely Claims but Has Failed to Do So, Demonstrating That Any Attempt to Amend Should Be Denied as Futile.

Plaintiff has had multiple opportunities over almost *two years* to set forth plausible, timely allegations to support his claims through his Charge of Discrimination, his Amended Charge of Discrimination, and his Complaint in this Court, and now in his Amended Complaint.  His repeated failure to do so is telling. If Plaintiff had additional factual allegations or information that could support timely claims, he would have included those allegations in at least one of these four filings. He did not.  Additionally, as demonstrated in Section V.B.2, *supra*, even if Plaintiff were to replead his Section 1981 claims via Section 1983, his discrimination, retaliation, and hostile work environment claims would still be untimely and/or insufficient as a matter of law.  For these reasons, any attempt by Plaintiff to further amend his claims will be futile and should be denied.  *Anything to Rent Lease Wholesale, Inc. v. Hughesville Borough*, No. 16- 00895-MWB, 2017 WL 736859, at *7 (M.D. Pa. Feb. 24, 2017) (denying leave to amend where plaintiffs already amended once, and recognizing that defendants "would face substantial prejudice were they required to brief yet another motion to dismiss involving the dismissed constitutional claims"); *see also Parks Miller v. Ruest*, No. 15-1754-MWB, 2016 WL 2752655, at *5 (M.D. Pa. May 11, 2016) (Brann, J.), *aff'd sub nom. Miller v.*

*County of Centre*, 702 F. App'x 69 (3d Cir. 2017); *Wilson v. Kerestes*, No. 12-0884-MWB, 2012 WL 3614042, at *2 (M.D. Pa. Aug. 21, 2012) (Brann, J.).

## VI.   CONCLUSION

For these reasons, Penn State respectfully requests that this Court grant its Rule 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief can be granted and dismiss partially the Amended Complaint with prejudice.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

Dated: August 18, 2021

*/s/ Sarah E. Bouchard*
Sarah E. Bouchard (PA 77088)
Ali M. Kliment* (PA 318988)
Margaret M. McDowell* (PA 322619)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone:  215.963.5000
Fax:  215.963.5001
sarah.bouchard@morganlewis.com
ali.kliment@morganlewis.com
margaret.mcdowell@morganlewis.com

Ami N. Wynne*
MORGAN, LEWIS & BOCKIUS LLP
110 N. Wacker Drive
Chicago, IL  60606
Phone: 312.324.1000
Fax: 312.324.1001
ami.wynne@morganlewis.com

*Admitted pro hac vice

*Counsel for Defendant*

25